## MERIWETHER v. COLUMBIAN MUT. LIFE INS. CO.

No. 4816.

Court of Appeal of Louisiana. Second Circuit.

Nov. 2, 1934.

R. J. Newson, of Shreveport, for appellant.

E. W. & P. N. Browne, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff held a policy of $2,500 in defendant company wherein it is stipulated:

"The Company will pay the Assured one-twentieth (1/20) the principal sum insured upon receipt of satisfactory proofs at its Home Office, including an X-Ray photograph, indicating the complete fracture of one of the long bones of the Arm at or above the wrist or the complete fracture of one of the long bones of the Leg at or above the ankle.

"If satisfactory proof is furnished, the Company will allow $10.00 as reimbursement of fee for X-Ray examination required. Payment of this benefit will not reduce the value of this policy."

He contends that he suffered a complete fracture of the long bone (ulna) of the left arm three or four inches above the wrist while said policy was in force, and timely submitted to defendant satisfactory proof thereof, including X-ray picture of the injured arm as required in the policy, and demanded payment to him of $135 as provided therein. This demand having been refused by defendant, this suit was instituted to recover the double of said amount and attorney's fees as authorized by Act No. 310 of 1910.

Defendant denies that the proofs and X-ray picture submitted to it by plaintiff disclosed that the bone of his arm was completely fractured, and denies, as a matter of fact, that said bone was completely fractured.

Plaintiff's demands were rejected by the lower court and his suit dismissed. He appealed.

This controversy revolves around the simple question of whether the injury to the ulna of plaintiff's left arm amounted to a complete fracture thereof. By "complete fracture," according to medical dictionary, and one of the prominent physicians who gave evidence in the case, is meant: "A total separation of the boneal alignment of a given bone; one in which the bone is entirely broken across."

Under the express terms of the policy, the proofs, including X-ray, to be furnished defendant at its home office, must be "satisfactory" to defendant, and must "indicate" a complete fracture of the bone. On the face of this language it would seem that whether or not the proofs were "satisfactory" and "indicated" a complete fracture of the bone was left entirely to the decision of defendant. However, we do not think the insurance contract open to such a strict construction. Certainly the decision of the insurer is not final in such circumstances; if that were true, the insured would be wholly at the mercy of the insurer regardless of the true facts of his case. The insurer, under the terms of this policy, had not the right to arbitrarily and unreasonably take the position that the proofs submitted were not "satisfactory" and did not "indicate" a complete fracture; and here we might add that we do not think the defendant acted arbitrarily or without reasonable grounds when it declined to accede to plaintiff's demands.

The X-ray of plaintiff's injured arm, with findings of one of the physicians consulted by him, was promptly sent to defendant's home office in Memphis, Tenn. The physician's finding was that the fracture was complete; but the X-ray, according to two radiologists of many years' active experience in taking and interpreting X-ray pictures, and two others of lesser experience, did not confirm this physician's opinion, but, on the contrary, only revealed an incomplete fracture of the ulna; and since it is shown that an X-ray picture of the bones of the arm will invariably reveal clearly any sort of fracture thereof, we are of the opinion that under the proofs submitted by plaintiff to defendant it was not "indicated" that the fracture was complete. The X-ray accompanying the other proofs, when interpreted by those most competent to do so, was at variance with plaintiff's physician's findings as to the character of the fracture.

On the merits of the case, we think the preponderance of the evidence clearly with defendant. Two physicians who made physical examination of the injured arm were of the opinion, with some minor qualifications,

that the ulna was completely broken across. They state that by manipulation of the lower arm at the situs of the injury they could hear mild crepitus which they were of the belief arose from the broken ends of the bone grinding together, although they found the fracture not discernible from simple touch and the approximation perfect; there was no separation of the bone parts.

It is shown that mild crepitus may be produced from an incomplete fracture, hardened tissues, ligaments, and muscles. In view of the fact that an X-ray picture will unquestionably reveal fractures of the bones of the arm with such clearness that experienced roentgenologists may not err in interpreting them, and that in this case such specialists say the fracture is not complete, and in view of the fact that crepitus may spring from causes and conditions other than a complete fracture, we think plaintiff's physicians are mistaken in their diagnosis of the injury to his arm.

One of plaintiff's physicians conceded that when there is doubt as to the existence or character of a fracture, the X-ray was resorted to to solve the doubt, and which would reveal the true condition of the injured bone; and that universities, hospitals, and surgeons generally use the X-ray, in the final analysis, to determine the nature and extent of all fractures.

The judgment appealed from being correct, it is hereby affirmed, with costs.